(786 P.2d 623)
No. 63,598

STATE OF KANSAS, *Appellee,* v. GREGORY EUGENE KELLY,
*Appellant.*

Opinion filed January 26, 1990.

*Philip B. Journey,* of Law Offices of Mike Roach, Chtrd., of Wichita, for the appellant.

*Thomas J. Robinson,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before DAVIS, P.J., BRISCOE and LARSON, JJ.

BRISCOE, J.: Defendant Gregory Kelly appeals his jury conviction of driving under the influence of alcohol, in violation of K.S.A. 1987 Supp. 8-1567. Although 8-1567 was amended in both 1988 and 1989, those amendments, while significant, are not germane to the issue in this case.

The sole issue presented is whether defendant was denied his statutory right to consult with counsel as provided in K.S.A. 1987 Supp. 8-1001(f)(1)(E), and, if he was denied counsel in violation of this statute, whether the proper remedy is suppression of the State's breath test or dismissal of the charge. Upon review of the

facts presented, we conclude defendant's statutory right to consult with counsel as provided by 8-1001(f)(1)(E) was violated. We reverse defendant's conviction and remand the case for a new trial.

On May 28, 1988, at 2:18 a.m., Trooper Phillip Bostian stopped defendant's 1949 automobile, which was factory equipped with only one taillight. Bostian had observed the automobile weave from the right lane to the left lane without signaling. After Bostian asked defendant to produce his license and get out of the automobile, Bostian noticed defendant was swaying, his eyes were bloodshot, and his speech was slurry or mushy. Bostian also smelled the odor of intoxicants.

Defendant was asked to perform some field sobriety tests, including the horizontal gaze nystagmus test, the alphabet test, the one-leg stand test, and the walk and turn test. Bostian placed defendant under arrest after he was unable to pay attention and follow the directions on the walk and turn test. Bostian reported that defendant failed the nystagmus test and the one-leg stand test and did not attempt the walk and turn test, but passed the alphabet test. Defendant testified he was unable to perform the balancing tests because he had problems with his knees and because a gunshot wound to his head had affected his balance.

As they were driving to jail, Bostian observed that defendant was sleeping. When they arrived at the jail, defendant stumbled and swayed as he got out of the automobile. At the jail booking desk, Bostian read defendant the implied consent advisory form, which states:

"1. Kansas law (K.S.A. 8-1001) requires you to submit to and complete one or more tests of breath, blood or urine to determine if you are under the influence of alcohol, drugs, or both.

"2. If you refuse to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, your refusal will result in the suspension of your driver's license for six (6) months.

"3. You have no right to consult with an attorney regarding whether to submit to testing.

"4. If you refuse to submit to and complete testing, your refusal may be used against you at any trial on a charge arising out of the operation or attempted operation of a motor vehicle while under the influence of alcohol and/or drugs.

"5. If you decide to submit to testing, after testing is completed you have the right to consult with an attorney and you may secure additional testing,

which, if desired, should be done as soon as possible and is customarily available from hospitals, medical care facilities and physicians.

"6. If you submit to the testing requested of you, the results of the test or tests may be used against you at any trial on a charge arising out of the operation or attempted operation of a motor vehicle while under the influence of alcohol and/or drugs."

When Bostian asked defendant to submit to a breath test, he refused unless his attorney was present. After defendant was told he did not have the right to consult his attorney at that point, defendant agreed to be tested because he believed he could consult his attorney after he submitted to testing.

Defendant was observed for 20 minutes, after which he gave two breath samples, one incomplete and one successful. Bostian testified the second test was satisfactory and that he would not have requested additional testing. After completing the breath test, defendant requested a blood test and to see his attorney. Bostian took defendant to St. Joseph's Hospital and tape-recorded their conversation en route. Bostian testified that, at various times, defendant asked to speak to an attorney before the breath test and after the breath test, and that he asked to have his attorney present. The taped conversation indicates defendant asked several times to have his attorney present during the blood test, and at least once he indicated he was being denied his right to communicate with his attorney. Bostian also testified that defendant was handcuffed and therefore could not have called his attorney, and that he asked both Bostian and a physician at the hospital to call his attorney for him. After being told his attorney could not be present and having failed to elicit any help in communicating with his attorney, defendant refused to take the blood test, and he was returned to jail.

Defendant was charged with driving under the influence, K.S.A. 1987 Supp. 8-1567(a)(1) and (2); failing to drive within a single lane, K.S.A. 8-1522; failing to signal when changing lanes, K.S.A. 8-1548; and driving while his driving privileges were suspended or revoked, K.S.A. 1987 Supp. 8-262(a)(1).

Defendant filed two motions to suppress the results of the breath test and one motion to dismiss. In support of his motions, he argued the results of the breath test and all statements should be suppressed on the grounds that custodial interrogation took

place without defendant first being advised of his *Miranda* rights. In addition, defendant argued his right to consult with counsel under K.S.A. 1987 Supp. 8-1001(f)(1)(E) was violated, warranting dismissal of the charges. He also challenged the State's procedures in conducting his breath test, claiming he had belched or slightly regurgitated prior to the test, making the results unreliable.

After a hearing, the court denied the motions and found defendant had not invoked his right to consult with counsel under 8-1001(f)(1)(E), stating: "The words are magic. The words are absolutely magic and are a creature of law. He has to have stated that before deciding to take the test, I want to consult with an attorney on whether or not to take the second test." The court also read the statute to mean that consulting with an attorney was only for the limited purpose of deciding whether to take the second test. Since defendant had already decided to take the test, the court found he could not consult with an attorney. Defendant filed a motion to reconsider his previous motions to suppress and dismiss, which was denied.

Prior to trial, all counts except driving under the influence were dismissed on the State's motion. Following a jury trial, defendant was convicted and sentenced to imprisonment for 270 days and fined $750. Following oral application, defendant was placed on probation. Defendant's motion for new trial was denied.

### Denial of Right to Consult with Counsel

Defendant contends the denial of his request to consult with counsel after he had submitted to a breath test requested by the State violated his statutory right to consult with counsel. While defendant contends such denial is violative of the United States Constitution, the Kansas Constitution, and 8-1001(f)(1)(E), the statutory violation is all that is significantly addressed on appeal.

The State claims that, even if defendant had a right to consult with counsel under 8-1001(f)(1)(E), when that statute is read in connection with K.S.A. 1987 Supp. 8-1004, he (1) did not properly invoke his right to consult with his attorney, (2) was properly given an opportunity to have additional testing, and (3) refused to take the additional test and therefore was not harmed by his lack of consultation with his attorney.

Judicial interpretation of statutes must be reasonable and sensible to effectuate legislative design and the true intent of the

legislature. *State v. Fowler,* 238 Kan. 213, 215, 708 P.2d 539 (1985). Where penal statutes are concerned, however, the rule of strict construction applies. The rule of strict construction of penal statutes against the State and for the accused is " 'not much less old than construction itself.' " *State v. Trudell,* 243 Kan. 29, 34, 755 P.2d 511 (1988). We may not give a different meaning to a word in a criminal statute than the word usually possesses. The word should not be given a meaning which leads to uncertainty or confusion if it is possible to construe it otherwise. 243 Kan. at 34. Words in common usage are to be given their natural and ordinary meaning. *State v. Magness,* 240 Kan. 719, 721, 732 P.2d 747 (1987).

Therefore, in the case at bar, K.S.A. 1987 Supp. 8-1001(f)(1)(E) must be construed against the State and in favor of defendant.

Kansas, like many other states, has enacted an implied consent statute:

"Any person who operates or attempts to operate a motor vehicle within this state is deemed to have given consent, subject to the provisions of this act, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs. The testing deemed consented to herein shall include all quantitative and qualitative tests for alcohol and drugs. A person who is dead or unconscious shall be deemed not to have withdrawn the person's consent to such test or tests, which shall be administered in the manner provided by this section." K.S.A. 1987 Supp. 8-1001(a).

K.S.A. 1987 Supp. 8-1001(f)(1) provides:

"Before a test or tests are administered under this section, the person shall be given oral and written notice that: (A) There is no right to consult with an attorney regarding whether to submit to testing; (B) refusal to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer will result in six months' suspension of the person's driver's license; (C) refusal to submit to testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both; (D) the results of the testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both; and (E) *after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities and physicians.* After giving the foregoing information, a law enforcement officer shall request the person to submit to testing. The selection

of the test or tests shall be made by the officer. If the person refuses to submit to and complete a test as requested pursuant to this section, additional testing shall not be given and the person's driver's license shall be subject to suspension as provided in K.S.A. 8-1002 and amendments thereto. The person's refusal shall be admissible in evidence against the person at any trial on a charge arising out of the alleged operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both." (Emphasis added.)

Following passage of the implied consent statutes, a bevy of questions arose concerning such issues as the Fifth Amendment right against self-incrimination, the requirement of *Miranda* warnings, and the Sixth Amendment right to counsel. While all of these issues are tangentially related to the case at bar, the only issue presented is whether defendant's statutory right to consult with counsel under 8-1001(f)(1)(E) has been violated.

The Kansas Supreme Court has determined there is no Sixth Amendment right to counsel prior to determining whether to submit to the test required by the Kansas implied consent law. *State v. Bristor*, 236 Kan. 313, 322, 691 P.2d 1 (1984). In explaining its holding, the court stated:

"In determining the stage of the criminal prosecution when the assistance of counsel is constitutionally mandated, the court looks to the detriment which the defendant would sustain if forced to undergo a particular stage of the proceeding without counsel; this process of determination has been labeled the critical stage analysis. [Citation omitted.]" 236 Kan. at 317.

Further, the court stated:

"In determining . . . a critical stage, . . . the court considers whether the presence of counsel is 'necessary to preserve the defendant's basic right to a fair trial . . . .' Second, the court analyzes whether 'potential substantial prejudice' to the defendant's right inheres . . . and whether the presence of counsel would help avoid such prejudice. [Citation omitted.]" 236 Kan. at 318.

The court then concluded that, although whether to take or refuse a blood alcohol test was critical to the individual, it is not critical in the constitutional sense.

Following *Bristor,* the legislature expanded the statutory requirements governing the administration of blood alcohol tests under the Kansas implied consent law. L. 1985, ch. 48, § 3; ch. 50, § 1. The statute requires that persons arrested for driving under the influence be given written and oral notice of their

statutory rights. In *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 755 P.2d 1337 (1987), the court held these notice provisions were mandatory. The court stated: "The clear language of the statute indicates that the legislature intended to ensure that a person arrested for driving under the influence was made aware, by the required notice procedure, of his statutory rights." 243 Kan. at 212.

One of those statutory rights is the right to counsel. K.S.A. 1987 Supp. 8-1001(f)(1)(E) reads:

"[A]fter the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities and physicians."

In the present case, defendant was properly read and given a written copy of the notice provisions of the statute. He submitted to testing and then invoked his right to counsel. The plain language of the statute is "after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing." The court hearing defendant's motions to suppress and to dismiss determined defendant not only had to articulate his request in the specific words of the statute, but that the right to consult with an attorney was for the limited purpose of deciding whether to take the additional test. In the court's view, since defendant had already asked to have a second test, his right to consult with an attorney was waived.

We have found no authority to support the interpretation that one has to repeat the language of a statute verbatim in order to invoke its provisions. Given the rules of construction for penal statutes, the statute must be construed in favor of the accused. *State v. Trudell*, 243 Kan. 29. Applying that construction to the statute at issue leads us to the conclusion that defendant did not have to repeat the language of the statute in order to consult with his attorney.

An analogy which is helpful to our construction of 8-1001(f)(1)(E) is the invocation of the Sixth Amendment right to counsel to terminate interrogation. *Smith v. Illinois*, 469 U.S. 91, 96 n.3, 83 L. Ed. 2d 488, 105 S. Ct. 490 (1984), outlines three approaches to determine whether the right to counsel has been properly invoked: (1) No matter how ambiguously a defendant refers to

an attorney, questioning must cease; (2) a threshold standard of clarity is outlined and, if the request falls below the line, the request does not trigger the right; and (3) an ambiguous request is met with no further interrogation, but questions to clarify the request may be asked. Under any of these standards, defendant's request in the present case would result in the cessation of questioning.

In *Smith,* the Court determined defendant's request was sufficiently clear to invoke his right to counsel. While questioning Smith, the police detective said, "You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?" Smith responded, "Uh, yeah. I'd like to do that." 469 U.S. at 93. The Court determined this statement was an unequivocally clear initial request for counsel. 469 U.S. at 100. When detectives continued to question him, Smith's rights were violated.

In the present case, after submitting to the breath test, defendant said several times that he wanted his attorney present when the blood test was administered, or that he was being denied his right to communicate with his attorney. Construing the statute in favor of the accused and against the State, defendant's requests were sufficient to invoke his statutory right to consult with an attorney.

The trial court also determined the right to consult with an attorney was limited to consultation about taking a second independent test. Again, using the rules of strict construction in favor of the accused, we cannot construe the statute to so limit the consultation. Although the word "and" is used in the conjunctive sense connecting the clauses "the person has the right to consult with an attorney" and "may secure additional testing," had the legislature intended to limit the consultation to whether a second test is performed, it could easily have written "the person has the right to consult with an attorney to determine whether to secure additional testing." Given the plain language and meaning of the words, and the rule of statutory construction which requires that we construe the statute in favor of the accused, the right to consult an attorney is not limited solely to determining whether to take an additional test.

The State argues the trial court's determination that Bostian did not deny defendant's opportunity to consult an attorney was a question of fact and the appellate court must only look to see if there is substantial competent evidence to support the finding. In addition, the State argues defendant did not object when the breath test was admitted into evidence at trial, and, therefore, under *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979), the issue is not preserved on appeal.

While the State is correct in asserting that findings of fact are upheld on review when supported by substantial competent evidence, it fails to acknowledge that this court's review of conclusions of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988). The trial court's determination that defendant had to repeat the language of the statute in making his request to consult with an attorney and could consult with an attorney only about securing an additional test clearly fell within the realm of law rather than fact. Thus, this court's review is unlimited.

The State's assertion that defendant failed to object to the admission of the breath test is in error. Counsel objected to the admission of State's exhibit 7, the printout from the successful breath test. Whether defendant's statutory right to counsel was violated was preserved for appellate review.

Under the facts of this case, defendant was given proper notice of his right to consult an attorney once he submitted to the breath test. The testimony clearly indicated, under the totality of the circumstances, that defendant invoked his right to counsel and was denied the opportunity to consult with his attorney, in violation of 8-1001(f)(1)(E).

### Remedy for Violation of Right to Consult with Counsel

Defendant contends that charges against him should be dismissed or, in the alternative, a new trial should be conducted and the results of the breath test suppressed. The State contends defendant was not denied his right to consult with counsel but, if the court so finds, suppression of the evidence is the appropriate sanction.

The statute is silent as to what sanction should be imposed for denial of the right to consult an attorney under 8-1001(f)(1)(E).

The statute does address, however, sanctions for failure to allow an independent test. K.S.A. 1987 Supp. 8-1004 states:

"Without limiting or affecting the provisions of K.S.A. 8-1001 and amendments thereto, the person tested shall have a reasonable opportunity to have an additional test by a physician of the person's own choosing. In case the officer refuses to permit such additional testing, the testing administered pursuant to K.S.A. 8-1001 and amendments thereto shall not be competent in evidence."

In *State v. George*, 12 Kan. App. 2d 649, 652, 754 P.2d 460 (1988), this court restated the clear meaning of this statute: "If the suspect is not given this opportunity for additional testing, the State's test is not competent in evidence."

Although defendant argues that dismissal of the charge is the appropriate remedy for violation of 8-1001(f)(1)(E), we conclude a new trial with suppression of the breath test and any evidence obtained following defendant's request for counsel after the breath test is the proper remedy.

Although we have found no case directly on point, the most closely analogous cases are those concerning statements obtained in violation of *Miranda.* In those cases, the Kansas Supreme Court has held such statements inadmissible. In *State v. Boone,* 220 Kan. 758, 768, 556 P.2d 864 (1976), the court ruled as inadmissible in the prosecution's case in chief "[a]ppellant's statement elicited after he stated he wanted to see his attorney." See *State v. Carty*, 231 Kan. 282, 644 P.2d 407 (1982).

In *State v. Prok,* 107 Wash. 2d 153, 727 P.2d 652 (1986), the court held that, when an individual's statutory right to counsel is denied, suppression of tainted evidence is the appropriate remedy. In that case, Prok, a Cambodian, was arrested for driving while intoxicated, his rights were explained, and he was given a breath test. Prok knew very little English, did not understand his rights, and was unaware he had a right to refuse the test or that he had a right to counsel. The trial court dismissed the case against Prok, but the Supreme Court concluded the proper remedy for such violation of the statute was suppression of the breath test.

In the present case, the statute is silent as to remedy for violation of the right to counsel provisions. K.S.A. 1987 Supp. 8-1004 provides for suppression of the breath test if the officer

denies the defendant the right to secure an independent test, and analogous Kansas case law requires suppression of statements or evidence obtained in violation of *Miranda*. We rely upon these authorities to conclude that suppression of evidence rather than dismissal of the charge is the proper remedy for violation of K.S.A. 1987 Supp. 8-1001(f)(1)(E).

Reversed and remanded for a new trial.