Atcheson, J.,
concurring: I join in Judge Gardner’s able opinion in all respects except one—the burden of proof an interested amanuensis must satisfy to validate a deed he or she has purportedly signed at the behest of the property owner. I believe those circumstances demand the interested amanuensis prove he or she acted as the robotic instalment of the. owner by clear and convincing evidence. A lesser standard invites fraud and would too easily co-opt the judicial process -in endorsing facially suspect transfers of property. Because the trial record filtered through the Cowley County District Court’s findings of fact clearly and convincingly shows Maureen Miles signed the transfer-on-death deed as the amanuensis of Roxie A. Mo,ore, I agree we should affirm the judgment and, therefore, concur.
*692 As the majority explains, an amanuensis is someone who signs a document for another person at the specific direction of that person. In that capacity, the amanuensis exercises no discretion or judgment and literally acts as a physical extension of that persons own hand to mechanically affix a signature. Nobody seems particularly bothered by the general concept, especially when foe person at whose direction the amanuensis purports to act is,around to confirm foe circumstances. Things get trickier if foe person is unavailable—particularly if he or she has died. But, again, the law seems content to accept foe circumstances as they appear, since the amanuensis has no obvious incentive to have acted other than at the direction of foe person who apparently wished to sign the document.
But foe picture fundamentally changes when the document transfers property to the amanuensis and foe transferor is no longer available to confirm that’s what he or she intended to do. That’s foe “interested amanuensis” problem we confront in this case. And it is a situation dripping with fraudulent possibilities. Most obviously, a person could draft a wholly false transfer-on-death deed or similar instrument naming himself or herself as foe transferee after foe putative transferor has died and then claim to have executed it as an amanuensis during the transferor’s lifetime. The most reliable witness to confirm or deny that assertion can no longer speak to the point. Confronted with that scenario, what’s a court to do?
The California Supreme Court mulled the issue over in Estate of Stephens, 28 Cal. 4th 665, 122 Cal. Rptr. 2d 358, 49 P.3d 1093 (2002). The majority concluded that a deed signed by an interested amanuensis should be presumptively invalid. 28 Cal. 4th at 677-78. The amanuensis may overcome the presumption by marshalling a preponderance of foe evidence showing that he or she really did act in that capacity. 28 Cal. 4th at 677-78 & n.7. A lone dissenter would have imposed a categorical rule, based on the statute of frauds, finding such a deed void. 28 Cal. 4th at 679-80 (Kennard, J., dissenting). The dissenter reasoned that the risk of fraud was too great and foe price of error too high in transfers of real property. 28 Cal. 4th at 678-81.
In the absence of any authority from the Kansas Supreme Court, *693 the majority opts for the California rule. As the majority intimates, there doesn’t seem to be much caselaw on interested amanuenses. The issue has never come before the Kansas appellate courts, and I have found no reported authority outside California. I am disinclined to go the way of the dissenter in Estate of Stephens. Absolute rules do have a certain sheen emanating from their very absoluteness: If the rule applies, the result requires no debate and brooks no deviation. Simple as that. But eventually some unanticipated set of facts will rear up to demonstrate the rule to be less than entirely fair in its unforgiving rigidity. The facts in Estate of Stephens were of that sort, as the dissenting justice acknowledged. 28 Cal. 4th at 681.
I readily agree with a rule that presumptively invalidates a transfer-on-death deed or similar instrument signed by a self-declared interested amanuensis. On its face, the deed suggests something fast and loose to be afoot. But there might be more to the story than tire document itself and the necessarily self-serving explanation of the interested amanuensis. So the presumption of invalidity should be rebuttable. Requiring a preponderance of evidence, however, seems too lax, especially when ownership of real property or other interests in land, such as mineral rights or life estates, are at stake. Under that standard, a factfinder would have to come down on the side of the interested amanuensis so long as a smidgen of evidence tilted the balance against fraud. I think that too thin a margin.
The facts of Estate of Stephens and those here do not really test a preponderance-of-the-evidence standard. There was overwhelming corroborating evidence that Stephens truly intended the interested amanuensis—his daughter—to have his house after he died. Here, too, there is considerable evidence that Moore directed Miles to act as an amanuensis in signing the disputed transfer-on-death deed. And Miles later transferred the real property to her sons (who were Moore’s grandsons), thereby carrying out what appears to have been Moore’s ultimate intent. These, then, are easy cases in which the legal outcomes conform to what most everyone would say is fair—except, of course, for the particular relatives who would have benefited had the deeds been invalid. In this case, that would be Moore’s son. But the California Supreme Court and the *694 majority here fail to look beyond the immediate cases to consider fully the outcomes the rule they fashion would foster in tougher cases where little evidence tends to corroborate the interested amanuensis. A putative amanuensis ought to have to do more than sneak past evidentiary equipoise to dispel the fraudulent appearance of a transfer-on-death deed in which he or she is the recipient of the real property.
Requiring an interested amanuensis to rebut the presumption of invalidity by clear and convincing evidence creates a strong safeguard against fraud. At the same time, the standard affords sufficient latitude for judicial recognition and enforcement of documents amply shown to be unlikely instruments of fraud. The Kansas Supreme Court has defined clear and convincing evidence to be that which establishes die truth of the facts asserted to be “highly probable,” imposing a materially heavier burden than a preponderance but not as heavy as beyond a reasonable doubt. In re B.D.-Y., 286 Kan. 686, Syl. ¶¶ 2-3, 187 P.3d 594 (2008). I would require an interested amanuensis to prove to a high degree of probability that he or she acted in that capacity in signing a deed or other document benefitting him or her. Such proof could entail statements from witnesses present when the document was signed, as happened here. It could include statements of the transferor to third parties that he or she intended to transfer the property at issue to the interested amanuensis, as was true in Estate of Stephens. Relevant, too, would be more general circumstances establishing reasons why the transferor might choose to bestow a substantial gift of real property on the amanuensis in preference to other persons. For example, Stephens repeatedly expressed warm feelings for his daughter who attended to him in his final years and spoke ill of his son for having abandoned him. 28 Cal. 4th at 670.
The law, of course, goes to considerable lengths to insure the integrity of transfers of real property, in part because of the unique character of land. See Bouton v. Byers, 50 Kan. App. 2d 34, 56-57, 321 P.3d 780 (2014). That’s a principal reason for the statute of frauds. See K.S.A. 33-105; K.S.A. 33-106; Mildfelt v. Lair, 221 Kan. 557, 566-67, 561 P.2d 805 (1977). That favors a heightened standard of proof in this case, since Moore’s home and the surrounding *695 land was at issue. But I would not limit the clear-and-convincing standard to transactions involving real property or other estates in land. The danger of fraud is equally present in other transfers effected through interested amanuenses. And many of those could involve substantial financial interests—titles for expensive or collectable motor vehicles, pay-on-death bank accounts, and instruments that become negotiable upon the endorsement of the holder are just some examples. Moreover, sound public policy ought to discourage the use of interested amanuenses, since sorting the genuine from the fraudulent imposes multiple burdens on the judicial process and rarely would circumstances truly compel the use of an interested amanuensis rather than a disinterested one. A heightened burden of proof would, at least theoretically, tend to discourage the practice.
Even under a preponderance standard, however, the uncorroborated testimony of an interested amanuensis typically would not be sufficient to overcome the presumption. Estate of Stephens, 28 Cal. 4th at 678 n.7. As with other interested witnesses, a factfinder should take account of the benefit accruing to the amanuensis in assessing his or her credibility. See State v. Scott, 39 Kan. App. 2d 49, 56, 177 P.3d 972 (2008) (“One of the methods or techniques for attacking the credibility of a witness is to show partiality, including bias, motive, and interest in the outcome.”); Dalton v. Battaglia, 402 F.3d 729, 735 (7th Cir. 2005) (“[A] witness’s potential self-interest in testifying about matters for which he or she has direct knowledge goes to the weight and credibility of the testimony[.]”); Wilson v. McDaniel, No. 109,898, 2014 WL 3019946, at *12 (Kan. App. 2014) (unpublished opinion) (Atcheson, J., concurring in part and dissenting in part) (credibility of interested witness should be left for factfinders where witness’ account of material events lacks substantial corroboration). A clear and convincing standard, however, better calibrates the evidence so that only in an extraordinary case might the uncorroborated testimony of an interested amanuensis overcome the presumption of invalidity.
This case does not require us to determine who might be considered an interested amanuensis. Miles plainly was, since she was the named transferee in the deed she signed. But she likely should have *696 been considered an interested amanuensis had the deed named her current husband or a close relative as transferee. I offer no particular definition of or boundary for an interested amanuensis. [*]
[*[*] To be clear on another point, an interested amanuensis issue has nothing to do with the transferors mental capacity or his or her susceptibility to undue influence. Those are entirely independent grounds upon which a transaction might be challenged. Here, for example, had Moore signed the transfer-on-death deed granting the property to Miles, no one would have acted as an amanuensis. But Moore’s testamentary capacity and Miles’ influence over Moore still would have presented bases for disputing the deed. By the same token, a transfer-on-death deed signed by an interested amanuensis could be challenged for that reason even if the trans-feror unquestionably had the requisite mental capacity and was unquestionably free of any undue influence.
In closing, I briefly explain why I concur in the judgment upholding the transfer even though I would apply a more stringent evidentiary standard than the district court did. Ordinarily, if the district court applies a standard inappropriately favoring the prevailing party, the matter ought to be remanded for redetermination using the proper standard. But here, the district court rendered detailed findings of fact, including credibility determinations, following a bench trial. Substantial competent evidence supports tiróse findings, so they are essentially unassailable on appeal. See K.S.A. 2016 Supp. 60-252(a)(5); Hodges v. Johnson, 288 Kan. 56, 65, 199 P.3d 1251 (2009) (“In evaluating the evidence to support the district court’s factual findings, an appellate court does not weigh conflicting evidence, evaluate witnesses’ credibility, or redetermine questions of fact.”).
Whether those facts constitute clear and convincing evidence Miles acted as an amanuensis at the direction of Moore when she signed the transfer-on-death deed functionally presents a question of law. State v. Bennett, 51 Kan. App. 2d 356, 361, 347 P.3d 229 (when material facts undisputed, issue presents question of law), rev. denied 303 Kan. 1079 (2015); Estate of Belden v. Brown County, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011) (legal effect of undisputed facts question of law). An appellate court *697 owes no particular deference to a district courts determination of legal questions: State v. Moore, 302 Kan. 685, 696-97, 357 P.3d 275 (2015) (appellate court reviews de novo legal conclusions based on factual findings). Accordingly, there would be no overriding reason to remand to the district court to weigh the settled evidence against that standard to arrive at a new legal conclusion. See State v. Randall, 257 Kan. 482, 486, 894 P.2d 196 (1995); State v. Parry, 51 Kan. App. 2d 928, 930, 358 P.3d 101 (2015), rev. granted 304 Kan. 1021 (2016); State v. Jones, 24 Kan. App. 2d 669, 675-76, 951 P.2d 1302 (1998). Because the facts, as the district court found them, rebut the presumption of invalidity of the deed under the heightened standard I would apply, I concur in affirming the judgment.